**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **STEPHANIE ANDREWS**, *et. al.*, <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **JPA R/E ASSOCIATES, L.P.**, *et. al.*, <br><br> **Defendants.** | **CIVIL ACTION 24-2371** |

<u>**MEMORANDUM OPINION**</u>

**Rufe, J.**                                                    **June 13, 2025**

Plaintiffs filed this lawsuit against Defendants JPA R/E Associates, L.P. ("JPA"), the Estate of Joseph Pezzano ("the Estate"), Bond, Pezzano, & Etze P.C. ("BPE"), Paula Pezzano, and Michele Gibson asserting various claims arising out of Plaintiffs' investments with Joseph Pezzano. All Defendants have filed various motions, including motions to dismiss and a motion to strike service.[1] Paula Pezzano and the Estate have also moved to strike service upon JPA. For the following reasons, both motions will be denied.

**I.    FACTUAL BACKGROUND**[2]

Plaintiffs are a group of investors who collectively invested $18.5 million with Joseph Pezzano through his investment business JPA.[3] Plaintiffs, who are mostly former long-term employees of Exelon/PECO, were given the option at retirement of cashing out their pensions and receiving a lump-sum distribution to invest into a retirement vehicle of their choosing,

---

[1] Paula Pezzano and the Estate of Joseph Pezzano have moved to dismiss as well as strike service on JPA. Pezzano Defs.' Mot. Dismiss [Doc. No. 12]. Defendants BPE and Gibson have separately moved to dismiss. BPE Defs.' Mot. Dismiss [Doc. No. 15].

[2] For the purposes of the Motions to Dismiss, the Court takes all of Plaintiff's allegations in the Complaint as true.

[3] Compl. [Doc. No. 1] ¶¶ 1-2.

including self-directed IRAs.[4] Plaintiffs were referred by mutual connections to Mr. Pezzano. Plaintiffs primarily sought to invest their retirement funds in low-risk investment strategies.[5] Mr. Pezzano represented himself to each of the Plaintiffs "to be a trustworthy financial broker and advisor who specialized in low-risk investments in REITs and annuities with guaranteed fixed rates of return between 7% and 8% per annum that were ideal for self-directed IRAs."[6]

The work of JPA was intertwined with and oftentimes indistinguishable from that of BPE. Throughout the time Plaintiffs were investing with Mr. Pezzano, BPE employees, on behalf of Mr. Pezzano and JPA, mailed monthly account statements to Plaintiffs, and Plaintiffs would also receive occasional email correspondence from BPE employees identifying the names of the BPE employees who were handing JPA's files and who the Plaintiffs should contact if they had any concerns.[7] Gibson, BPE's office manager, most frequently sent Plaintiffs their monthly statements, which included a JPA header with the address and phone number of BPE's offices.[8] Gibson's emails to Plaintiffs always included her signature block as the office manager for BPE. JPA's address and phone number on the monthly statements was the same as BPE's address and phone number.[9]

Mr. Pezzano died unexpectedly on December 25, 2023. Following Mr. Pezzano's death, Plaintiffs have been unable to obtain any information regarding the status or location of their investment funds.[10] Plaintiffs contacted BPE's employees, who had previously served as Plaintiffs' point of contact, but the employees claimed that BPE had no affiliation with JPA nor

---

[4] Compl. [Doc. No. 1] ¶ 30.
[5] *See* Compl. [Doc. No. 1] ¶ 53.
[6] Compl. [Doc. No. 1] ¶ 33.
[7] Compl. [Doc. No. 1] ¶ 44.
[8] Compl. [Doc. No. 1] ¶ 45.
[9] Compl. [Doc. No. 1] ¶ 45.
[10] BPE Defs.' Mem. Supp. Mot. Dismiss [Doc. No. 15-1] at 2.

had any role in Mr. Pezzano's investment business.[11] Moreover, BPE purported to have no knowledge of the status or location of Plaintiffs' investments.[12]

Plaintiffs brought suit against Defendants JPA, The Estate of Joseph Pezzano, BPE, Michele Gibson, and Paula Pezzano.[13] In their Complaint, Plaintiffs alleged the following claims: (I) Violation of Exchange Act Section 10(b) and SEC Rule 10b-5; (II) fraudulent misrepresentation; (III) negligent misrepresentation; (IV) aiding and abetting fraud; (V) breach of fiduciary duties; (VI) breach of contract; (VII) conversion; and (VIII) unjust enrichment.[14]

Defendants Paula Pezzano and the Estate of Joseph Pezzano (collectively, the "Pezzano Defendants") have filed a motion to dismiss and a motion "to strike the insufficient service made upon [JPA]."[15] Defendants BPE and Gibson (collectively, the "BPE Defendants") have filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(b)(1). Both motions argue that Plaintiffs fail to state a claim under Exchange Act Section 10(b) and SEC Rule 10b-5.[16] BPE Defendants also claim that all of Plaintiffs' state law claims should be dismissed pursuant to FRCP 12(b)(6). Alternatively, BPE Defendants request that should the Court dismiss Plaintiffs' federal law claims, that the Court decline to exercise supplemental jurisdiction over Plaintiffs' state law claims and dismiss them based on lack of subject matter jurisdiction under FRCP 12(b)(1).[17]

---

[11] Compl. [Doc. No. 1] ¶ 5.
[12] Compl. [Doc. No. 1] ¶ 5.
[13] *See* Compl. [Doc. No. 1].
[14] Compl. [Doc. No. 1] ¶ 7.
[15] Pezzano Defs.' Mot. Dismiss [Doc. No. 12].
[16] BPE Defs.' Mem. Supp. Mot. Dismiss [Doc. No. 15-1] at 5-7.
[17] BPE Defs.' Mem. Supp. Mot. Dismiss [Doc. No. 15-1] at 15-16.

## II.  LEGAL STANDARD

When faced with a Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief can be granted, courts must accept all factual allegations in the complaint as true.[18] To survive a motion to dismiss, a complaint must contain sufficient factual allegations "to state a claim to relief that is plausible on its face."[19] A claim has facial plausibility when the plaintiff pleads factual allegations that raise a right to relief above the speculative level.[20] Courts must consider the complaint in its entirety, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.[21]

In securities fraud cases, a plaintiff must also meet the heightened pleading standards set by the Private Securities Litigation Reform Act ("PSLRA").[22] Plaintiffs "may not benefit from inferences following from vague or unspecific allegations—inferences that may arguably have been justified under a traditional Rule 12(b)(6) analysis."[23] Under the PSLRA's heightened pleading standards, "any private securities complaint alleging that the defendant made a false or misleading statement must (1) specify each statement alleged to have been misleading and the reason or reasons why the statement is misleading and (2) state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."[24] Courts "must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff."[25] Moreover, the inquiry is whether, when taken collectively,

---

[18] *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[19] *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009).

[20] *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007).

[21] *Tellabs*, 551 U.S. at 322.

[22] *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 252 (3d Cir. 2009).

[23] *Kumar v. Kulicke & Soffa Indus., Inc.*, No. 19-0362, 2019 WL 5081896, at *4 (E.D. Pa. Oct. 9, 2019) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 224 (3d Cir. 2002)).

[24] *Tellabs*, 551 U.S. at 321 (quoting 15 U.S.C. §§ 78u-4(b)(1)-(2)) (cleaned up).

[25] *Id.* at 310.

all the facts alleged "give rise to a strong inference of scienter, not whether any individual

allegation, scrutinized in isolation, meets that standard."[26]

## III.    DISCUSSION

### a.    Defendant BPE and Defendant Gibson's Motion to Dismiss

#### i.    Count I – Violation of Exchange Act Section 10(b) and SEC Rule 10b-5

Count One of the Complaint asserts a violation of the Exchange Act Section 10(b) and

SEC Rule 10b-5. Section 10(b) of the Securities Exchange Act provides that it is:

> unlawful for any person, directly or indirectly, by the use of any means or
> instrumentality of interstate commerce or of the mails, or of any facility of any
> national securities exchange . . . [t]o use or employ, in connection with the purchase
> or sale of any security . . . any manipulative or deceptive device or contrivance in
> contravention of such rules and regulations as the Commission may prescribe as
> necessary or appropriate in the public interest or for the protection of investors.[27]

Pursuant to Section 10(b), the SEC promulgated Rule 10b-5 which made the following unlawful:

> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material
> fact necessary in order to make the statements made, in the light of the
> circumstances under which they were made, not misleading, or
> (c) To engage in any act, practice, or course of business which operates or would
> operate as a fraud or deceit upon any person, in connection with the purchase or
> sale of any security.[28]

To state a Section 10(b) securities fraud claim, a plaintiff must plead "(1) material

misrepresentation or omission, (2) scienter, (3) a connection between the misrepresentation or

omission and the purchase or sale of a security, (4) reliance upon the misrepresentation or

omission, (5) economic loss, and (6) loss causation."[29] Claims against any secondary actors must

independently satisfy each element for liability.[30]

---

[26] *Id.* at 323.
[27] 15 U.S.C.A. § 78j(b).
[28] 17 C.F.R. § 240.10b-5.
[29] *In re Hertz Global Holdings Inc.*, 905 F.3d 106, 114 (3d Cir. 2018).
[30] *Id.*

Additionally, any person or entity who employs a manipulative device or makes a material misstatement that a purchaser or seller of securities relies on may be liable as a primary violator, assuming all of the requirements for primary liability are met.[31] The Third Circuit has held that even though securities fraud claims may be governed by federal law, liability may be imputed to others based on state agency law,[32] holding that liability could be imputed to an individual's employer under Rule 10b-5 based on Pennsylvania agency law.[33]

Under Pennsylvania state law, "[t]he imputation doctrine recognizes that principals generally are responsible for the acts of agents committed within the scope of their authority."[34] Courts will presume that an individual is acting within the scope of his or her employment or authority if the employer benefits from the fraud.[35] Thus, an employer can be liable for the actions of its employees under securities fraud claims if the actions were committed during the course and scope of employment.

In their motion to dismiss, BPE Defendants claim that "Plaintiffs have failed to allege with the requisite level of particularity how [BPE Defendants] made a material misrepresentation to Plaintiffs with scienter that caused them to purchase a security."[36] With respect to Gibson, BPE Defendants assert that Plaintiffs failed to allege scienter on behalf of Gibson and failed to show that Gibson was doing anything aside from "blindly following an order from a superior."[37] With respect to BPE, BPE Defendants assert that "Plaintiffs have failed to allege with particularity how BPE made any misrepresentations, with scienter, that caused Plaintiffs to

---

[31] *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191 (1994).

[32] *See Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 494 (3d. Cir. 2013).

[33] *Id.*

[34] *Id.* (quoting *Off. Comm. of Unsecured Creditors of Allegheny Health Educ. & Rsch. Found. v. Price WaterhouseCoopers, LLP (AHERF)*, 989 A.2d 313, 333 (Pa. 2010)).

[35] *See Belmont*, 708 F.3d at 496 ("Where one in transacting the business of his principal is committing fraud for his own benefit, he is not acting within the scope of his authority as his principal's agent.").

[36] BPE Defs.' Mem. Supp. Mot. Dismiss [Doc. No. 15-1] at 7.

[37] BPE Defs.' Mem. Supp. Mot. Dismiss [Doc. No. 15-1] at 7.

purchase securities."[38] Plaintiffs assert that "the Complaint alleges facts sufficient to support [BPE's] vicarious liability for the conduct of Pezzano/JPA and Gibson based on actual and ostensible agency."[39]

### 1. Count I Against BPE

Plaintiffs' Complaint adequately pleads a claim against BPE under Rule 10b-5. For the first element, Plaintiffs plead numerous misrepresentations and omissions by BPE employees, including mailing fraudulent account statements each month to Plaintiffs and providing Plaintiffs with free tax return preparation to avoid scrutiny of their investments by an independent tax professional.[40] Moreover, Plaintiffs asserted that Mr. Pezzano and Gibson's conduct occurred while these individual were acting as an actual and/or ostensible agent for JPA and BPE.[41] As the Third Circuit has recognized that an individual's violations of Rule 10b-5 may be imputed to his or her employer when the employee is acting within the scope of his or her authority, Mr. Pezzano and Gibson's conduct may be imputed to JPA and BPE.[42] Thus, Plaintiff's Complaint satisfies the first element for a Rule 10b-5 claim.

Plaintiffs plead scienter against Gibson and Mr. Pezzano by alleging that these individuals "intentionally and/or recklessly employed these multiple devices, schemes, and artifices to defraud for the purpose of convincing each of the [Plaintiffs] to entrust their life savings and retirement funds to Pezzano . . . ."[43] Plaintiffs assert that BPE employees acted with

---

[38] BPE Defs.' Mem. Supp. Mot. Dismiss [Doc. No. 15-1] at 7.
[39] Pls.' Opp. BPE Defs.' Mot. Dismiss [Doc. No. 17-1] at 6.
[40] Compl. [Doc. No. 1] ¶¶ 44-47.
[41] Compl. [Doc. No. 1] ¶¶ 157, 160. The Court does not need to find at this time that Mr. Pezzano was actually acting as an agent for BPE, merely that Plaintiffs have plausibly alleged as such. The Court notes that Mr. Pezzano worked out of the offices of BPE and was advertised on BPE's website as a "Senior Business Advisor" to the team. Pls.' Ex. B [Doc. No. 24-2]. Defendants agree that Mr. Pezzano was an employee of BPE. BPE Defs.' Mem. Mot. Supp. Dismiss [Doc. No. 151] at 2.
[42] *Belmont*, 708 F.3d at 494.
[43] Compl. [Doc. No. 1] ¶¶ 158, 161.

the required state of mind, which the Third Circuit has described as one "'embracing [an] intent to deceive, manipulate, or defraud,' either knowingly or recklessly."[44] Scienter may be imputed to BPE based on the conduct of its agents Mr. Pezzano and Gibson.

For the third element, Plaintiffs pled a connection between BPE employees' misrepresentations and their purchase of securities because they asserted that had they known of the true nature of Gibson, Mr. Pezzano, and other BPE employees' misrepresentations, they would not have agreed to invest their money with Mr. Pezzano.[45] This allegation also establishes that Plaintiffs relied on Gibson, Mr. Pezzano, and other BPE employees' misrepresentations, which is the fourth element required under Rule 10b-5. Thus, Plaintiffs have satisfied the third and fourth element required to state a claim under Rule 10b-5.

Plaintiffs properly plead the fifth element—economic loss—by alleging that as a direct and proximate result of the fraud of BPE employees, the Plaintiffs collectively sustained losses in excess of $18.5 million. Finally, the sixth element of loss causation is established through Plaintiffs' factual allegations detailing individual Plaintiffs' transfer of funds to Mr. Pezzano based on BPE employees' misrepresentations—funds which were not invested and are now missing and unaccounted for.[46] Accordingly, the Court will not dismiss Count One against BPE, and the claim will proceed.

### 2.  Count I Against Gibson

Plaintiffs' securities fraud claim against Gibson meets the pleading requirements established by the PSLRA. First, Plaintiffs' Complaint provides factual allegations detailing Gibson's conduct such as her manufacturing account statements to create the false impression

---

[44] *In re Hertz Global Holdings Inc.*, 905 F.3d at 114 (quoting *Institutional Inv'rs*, 564 F.3d at 252).
[45] Compl. [Doc. No. 1] ¶ 162.
[46] *See e.g.*, Compl. [Doc. No. 1] ¶¶ 100-108.

that Plaintiffs' money had been invested in legitimate funds, sending these materially inaccurate account statements to each Plaintiff monthly, and providing other false information to each Plaintiff that led them to believe that their funds were being duly invested in legitimate funds.[47] These factual allegations surely reflect a material misrepresentation on behalf of Gibson, satisfying the first element required for a claim under Rule 10b-5.

Next, Plaintiffs adequately plead scienter, the second element for a claim under Rule 10b-5, because their Complaint alleged that "Gibson intentionally and/or recklessly employed these multiple devices, schemes, and artifices to defraud for the purpose of convincing each of the [Plaintiffs] to entrust their life savings and retirement funds to Pezzano . . . ."[48] Thus, scienter is adequately pled because Plaintiffs asserted that Gibson acted with the required state of mind, which the Third Circuit has described as one "embracing [an] intent to deceive, manipulate, or defraud, either knowingly or recklessly."[49]

For the third element, Plaintiffs plead a connection between Gibson's misrepresentation and the purchase or sale of a security because they stated that if they knew of the true nature of Gibson's misrepresentations, they would not have agreed to invest their money with Mr. Pezzano.[50] This allegation also establishes that Plaintiffs relied on Gibson's misrepresentations, which is the fourth element under Rule 10b-5. Thus, Plaintiffs have satisfied the third and fourth element required to state a claim under Rule 10b-5.

Plaintiffs plead the fifth element—economic loss—by alleging that as a direct and proximate result of the fraud of Gibson, the Plaintiffs collectively sustained losses in excess of $18.5 million. Finally, the sixth element of loss causation is established through Plaintiffs'

---

[47] Compl. [Doc. No. 1] ¶ 159.
[48] Compl. [Doc. No. 1] ¶ 161.
[49] *In re Hertz Global Holdings Inc.*, 905 F.3d at 114 (internal citations omitted).
[50] Compl. [Doc. No. 1] ¶ 162.

factual allegations detailing individual Plaintiffs' transfer of funds to Mr. Pezzano based in part on Gibson's misrepresentations—funds which were not invested and are now missing and unaccounted for.[51]

Since Plaintiffs' securities fraud claims against Gibson independently satisfy each element for liability under Rule 10b-5, the Court declines to dismiss Count One against Gibson, and the claim will proceed to discovery.

### ii.    Count II – Fraudulent Misrepresentation

Count Two of the Complaint asserts fraudulent misrepresentation. To state a cause of action for fraudulent misrepresentation under Pennsylvania law, a plaintiff must prove: "(1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation and (5) damage to the recipient as the proximate result."[52]

BPE Defendants argue that Plaintiffs' fraudulent misrepresentation claim should be dismissed because "Plaintiffs have failed to allege with particularity that BPE Defendants knowingly made any misrepresentations to Plaintiffs."[53] However, Plaintiffs pled that Gibson knowingly misrepresented the truth surrounding Plaintiffs' investments by manufacturing materially inaccurate account statements and furnishing these false monthly statements to Plaintiffs.[54] According to Plaintiffs, Gibson's conduct created the false impression that Plaintiffs' funds were legitimately invested, and even though Gibson knew that their money was not invested in legitimate funds, Gibson failed to disclose this to Plaintiffs.[55]

---

[51] *See e.g.*, Compl. [Doc. No. 1] ¶¶ 100-108.
[52] *Petruska v. Gannon Univ.*, 462 F.3d 294, 310 (3d Cir. 2006) (quoting *Martina v. Lancaster Batter Co.*, 606 A.2d 444, 448 (Pa. 1992)).
[53] BPE Defs.' Mem. Supp. Mot. Dismiss [Doc. No. 15-1] at 9.
[54] Pls.' Mem. Opp. BPE Defs.' Mot Dismiss [Doc No. 17-1] at 8.
[55] Pls.' Mem. Opp. BPE Defs.' Mot Dismiss [Doc No. 17-1] at 8.

As for their claims against BPE, Plaintiffs assert that they were similarly misled by BPE to believe that their money was invested in legitimate funds through preparing tax returns for Plaintiffs and incorporating the materially false information from the sham account statements into their tax returns.[56] Based on this conduct, Plaintiffs have pled sufficient factual allegations that the BPE Defendants made a misrepresentation of material fact and that Gibson knew that her statements made to Plaintiffs regarding their accounts were false. Accordingly, Plaintiffs' fraudulent misrepresentation claim will survive.

### iii.    Count III – Negligent Misrepresentation

Count III of the Complaint asserts a claim for negligent misrepresentation. "The four elements of a common law claim for negligent misrepresentation are: (1) a misrepresentation of a material fact; (2) made under circumstances in which the actor should have known of its falsity; (3) with an intent to induce another to act on it; (4) thereby causing injury to a party who justifiably relied upon the misrepresentation."[57] Like intentional misrepresentation, negligent misrepresentation must concern a material fact.[58] However, to state a claim for negligent misrepresentation, "the speaker need not know his or her words are untrue;" rather, the speaker must merely fail to make a reasonable investigation into the truth of his or her words.[59]

Defendants argue that Plaintiffs' negligent misrepresentation claim should be dismissed solely because Plaintiffs failed to allege any facts to support that Gibson "knew or should have known any such statements were false or intended Plaintiffs to act on any such false statements."[60] However, Plaintiffs pled that Gibson knowingly misrepresented the truth

---

[56] Pls.' Mem. Opp. BPE Defs.' Mot Dismiss [Doc No. 17-1] at 8.
[57] *Gregg v. Ameriprise Financial, Inc.*, 245 A.3d 637, 646 (Pa. 2021).
[58] *Id.*
[59] *Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999).
[60] BPE Defs.' Mem. Supp. Mot. Dismiss [Doc. No. 15-1] at 9.

surrounding Plaintiffs' investments by manufacturing materially inaccurate account statements and furnishing these false monthly statements to Plaintiffs.[61] According to Plaintiffs, Gibson's conduct created the false impression that the Plaintiffs' funds were legitimately invested, and even though Gibson knew that their money was not invested in legitimate funds, Gibson failed to disclose this to Plaintiffs.[62]

In supporting their claim against BPE, Plaintiffs assert that they were similarly misled by BPE to believe that their money was invested in legitimate funds through preparing tax returns for Plaintiffs and incorporating the materially false information from the sham account statements into their tax returns.[63] Thus, Plaintiffs have pled sufficient factual allegations that BPE made a misrepresentation of material fact and that BPE failed to investigate the truth and validity underlying their conduct. Accordingly, Plaintiffs' negligent misrepresentation claim will survive.

### iv.  Count IV - Aiding and Abetting Fraud

Count Four of the Complaint alleges aiding and abetting fraud. "Pennsylvania law recognizes the tort of aiding and abetting fraud, and the scienter requirement for this cause of action is actual knowledge of the underlying fraud."[64] Thus, a defendant may be subject to liability for aiding and abetting fraud "if the defendant knew that the other party's conduct was wrongful."[65] BPE Defendants assert that Plaintiffs' aiding and abetting fraud count should be dismissed because Plaintiffs "have not adduced facts to support that BPE Defendants had actual knowledge of any fraud that may have been committed by Pezzano or JPA."[66] Moreover, BPE

---

[61] Pls.' Mem. Opp. BPE Defs.' Mot Dismiss [Doc No. 17-1] at 8.
[62] Pls.' Mem. Opp. BPE Defs.' Mot Dismiss [Doc No. 17-1] at 8.
[63] Pls.' Mem. Opp. BPE Defs.' Mot Dismiss [Doc No. 17-1] at 8.
[64] *Marion v. Bryn Mawr Tr. Co.*, 288 A.3d 76, 94 (Pa. 2023).
[65] *Id.* at 90 (citing RESTATEMENT (THIRD) OF TORTS: LIAB. FOR ECON. HARM § 28 (AM. L. INST. 2020)).
[66] BPE Defs.' Mem. Supp. Mot. Dismiss [Doc. No. 15-1] at 10.

Defendants assert they "had no actual knowledge of allegations of any wrongdoing by Mr. Pezzano, and Plaintiffs have failed to allege any facts to support such knowledge in their Complaint."[67]

Plaintiffs pled that BPE had actual knowledge of Mr. Pezzano's fraud, evidenced by BPE preparing Plaintiffs' tax returns annually free-of-charge "for the purpose of keeping Defendants' fraudulent scheme 'in house' and to avoid detection by outside accountants."[68] Additionally, BPE referred Plaintiffs to specific attorneys to provide Plaintiffs with free wills services to "keep 'outside attorneys' from digging around the [Plaintiffs'] finances and investments."[69] Similarly, Plaintiffs pled that Gibson aided and abetted Mr. Pezzano's fraud by knowingly preparing fraudulent monthly statements and furnishing these statements to cause Plaintiffs to believe their funds were being invested legitimately.[70] Thus, Plaintiffs have pled sufficient allegations that BPE and Gibson had actual knowledge of Mr. Pezzano's fraud and took steps to aid and abet this fraud. Accordingly, Plaintiffs' aiding and abetting fraud count will survive.

v.  Count V - Breach of Fiduciary Duty

Count Five of the Complaint asserts breach of fiduciary duty, which requires Plaintiffs to first demonstrate that a fiduciary or confidential relationship existed.[71] A fiduciary or confidential relationship "requires that 'one person has reposed a special confidence in another to the extent that the parties do not deal each other on equal terms.'"[72] Such a fiduciary or confidential relationship may exist "whenever one occupies toward another such a position of advisor or counselor" to reasonably "inspire confidence that he will act in good faith for the

---

[67] BPE Defs.' Mem. Supp. Mot. Dismiss [Doc. No. 15-1] at 10.
[68] Pls.' Mem. Opp. Defs.' Mot Dismiss [Doc. No. 17-1] at 9.
[69] Pls.' Mem. Opp. Defs.' Mot Dismiss [Doc. No. 17-1] at 9.
[70] Pls.' Mem. Opp. Defs.' Mot Dismiss [Doc. No. 17-1] at 9.
[71] *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 500 (3d. Cir. 2013).
[72] *Id.* (quoting *In re Estate of Clark*, 359 A.2d 777, 781 (Pa. 1976)).

other's interest."[73] In addition to demonstrating that a fiduciary or confidential relationship

existed, to prevail on a count of breach of fiduciary duty, a plaintiff must also show that the

defendant negligently or intentionally failed to act in good faith for the plaintiff's benefit, and

that the plaintiff suffered an injury because of the defendant's breach of its fiduciary duty.[74]

BPE Defendants assert that Plaintiffs have not pled that BPE Defendants breached their

fiduciary duty to Plaintiffs.[75] According to BPE Defendants, they were not investors or brokers

and thus had no fiduciary duty to Plaintiffs for any investment decisions Plaintiffs made.[76]

However, Plaintiffs pled that Mr. Pezzano was an actual and/or ostensible agent of JPA and BPE.

Accordingly, based on the doctrine of imputation, Mr. Pezzano's conduct may be imputed to

JPA and BPE because Mr. Pezzano committed the fraud during the course of his authority and

JPA and BPE benefitted from this fraud.[77] Thus, Mr. Pezzano's fiduciary duties are imputed to

BPE to act in the best interest of Plaintiffs who invested their life savings and retirement funds

pursuant to Mr. Pezzano's representations that he would invest Plaintiffs' funds as an

experienced securities broker/investment advisor.[78] Plaintiffs were not experienced or

sophisticated investors, and accordingly, they reposed their trust and confidence in Mr. Pezzano

based on his self-proclaimed expertise.[79] Considering the special confidence Plaintiffs placed in

Mr. Pezzano and the unequal position of the parties, Plaintiffs have adequately pled the existence

of a fiduciary relationship that is imputed to BPE.

Moreover, Plaintiffs pled that BPE Defendants breached their fiduciary duties owed to

Plaintiffs by failing to invest Plaintiffs' funds and instead using Plaintiffs' funds for the benefit,

---

[73] *Id.* (quoting *Silver v. Silver*, 219 A.2d 659, 662 (Pa. 1966)).
[74] *Marion*, 288 A.3d at 88.
[75] BPE Defs.' Mem. Supp. Mot. Dismiss [Doc. No. 15-1] at 11.
[76] BPE Defs.' Mem. Supp. Mot. Dismiss [Doc. No. 15-1] at 11.
[77] *Off. Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 358 (3d Cir. 2001).
[78] Compl. [Doc. No. 1] ¶¶ 196-98.
[79] Compl. [Doc. No. 1] ¶¶ 195-96.

use, and enjoyment of Mr. Pezzano, JPA, and BPE.[80] Plaintiffs asserted that they were injured as a direct and proximate result of the BPE Defendants breach of fiduciary duties through losses in the approximate collective amount of $18.5 million.[81] Thus, Plaintiffs have adequately pled the elements required for a breach of fiduciary duty count: the existence of a fiduciary relationship, breach of that fiduciary relationship, and injury resulting from the breach. Accordingly, Plaintiffs' breach of fiduciary duty count will survive.

vi.   <u>Count VI - Breach of Contract</u>

Count Six of the Complaint alleges breach of contract. Under Pennsylvania law, to state a count for breach of contract, plaintiff must plead: "(1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages."[82] Plaintiffs' breach of contract count is based on the Plaintiffs' "oral contract with Mr. Pezzano/JPA whereby Plaintiffs agreed to provide Mr. Pezzano/JPA with monies to be invested in annuities and REITs in exchange for Mr. Pezzano/JPA to receive a fee equal to 0.25% per year on the value of the invested funds."[83] This count shows the existence of a contract between the parties and the essential terms, satisfying the first element for a breach of contract count. Next, Plaintiffs pled that BPE Defendants breached the parties' contract by their failure to invest Plaintiffs' money in accordance with the parties' agreement and misappropriating Plaintiffs' funds for BPE Defendants' personal use and enjoyment.[84] Finally, Plaintiffs assert that as a result of the breach, they collectively sustained damages in excess of $18.5 million. Since Plaintiffs

---

[80] Compl. [Doc. No. 1] ¶ 199.
[81] Compl. [Doc. No. 1] ¶ 200.
[82] *DelphX Corp. v. Fondren*, 600 F. Supp. 3d 540, 547–48 (E.D. Pa. 2022) (quoting *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016)).
[83] Compl. [Doc. No. 1] ¶ 203.
[84] Compl. [Doc. No. 1] ¶ 207.

have pled each element required for a breach of contract count, the Court declines to dismiss the breach of contract count, and the count will proceed to discovery.

    vii.  <u>Count VII - Conversion</u>

Count Seven of the Complaint alleges conversion. In Pennsylvania, "conversion is widely understood as 'the deprivation of another's right of property in, or use or possession of, chattel, or other interference therewith, without the owner's consent and without lawful justification.'"[85] Importantly, the tort of conversion does not require proof of intent to commit a wrong.[86] The exercise of control merely has to be intentional.[87] Under Pennsylvania law, conversion can be committed in several ways:

> (1) acquiring possession of the chattel with the intent to assert a right to it that is adverse to the owner;
> (2) transferring the chattel and thereby depriving the owner of control;
> (3) unreasonably holding possession of the chattel from one who has the right to it;
> (4) misusing or seriously damaging the chattel in defiance of the owner's rights.[88]

In their motion to dismiss, BPE Defendants argue that Plaintiffs made several allegations against Mr. Pezzano but failed to assert any facts supporting a reasonable inference that BPE Defendants are liable for Mr. Pezzano's alleged misconduct.[89] However, in their Complaint, the Plaintiffs asserted that they entrusted Mr. Pezzano with upwards of $18.5 million which Mr. Pezzano promised to invest for the Plaintiffs' benefit.[90] Mr. Pezzano did not invest these funds as promised, and instead misappropriated said funds and/or transferred said funds to JPA, BPE, Paula Pezzano, and others.[91] Thus, Plaintiffs content, BPE Defendants exercised unlawful

---

[85] *Rosemont Taxicab Co. v. Philadelphia Parking Auth.*, 327 F. Supp. 3d 803, 828 (E.D. Pa. 2018) (internal citations omitted).
[86] *Id.*
[87] *Id.*
[88] *Prudential Ins. Co. of Am. v. Stella*, 994 F. Supp. 318, 323 (E.D. Pa. 1998) (internal citations omitted).
[89] BPE Defs.' Mem. Supp. Mot. Dismiss [Doc. No. 15-1] at 12.
[90] Compl. [Doc. No. 1] ¶¶ 212–13.
[91] Compl. [Doc. No. 1] ¶ 214.

dominion and control over Plaintiffs' property and thereby unlawfully converted it for their own benefit.[92]

Therefore, BPE's unreasonable receipt, retention, and possession of funds belonging to Plaintiffs supports Plaintiffs' count for conversion because BPE possessed Plaintiffs' property without consent. Moreover, BPE Defendants misused Plaintiffs' funds by failing to invest them according to the parties' agreement and instead using the funds for BPE Defendants' personal use and enjoyment.[93] Therefore, Plaintiffs have pled sufficient facts supporting their conversion count, and the Court will deny the motion to dismiss Count Seven.

b. Count VIII - Unjust Enrichment

Count Eight of the Complaint alleges a count for unjust enrichment, which requires Plaintiffs to plead that: (1) Plaintiffs conferred benefits on the Defendants, (2) Defendants appreciated such benefits, and (3) the benefits were accepted and retained under such circumstances that it would be inequitable for Defendants to retain the benefit without the payment of value.[94] Under Pennsylvania law, "the most significant element of the doctrine is whether the enrichment of the defendant is *unjust*."[95] "It is well-settled in Pennsylvania that the existence of a contract prevents a party from bringing a claim for unjust enrichment."[96] Nevertheless, Rule 8(d)(2) "permits a plaintiff to plead unjust enrichment in the alternative in certain circumstances," including where "the existence of a contract is uncertain or its validity is disputed by the parties."[97] Because BPE Defendants dispute the validity of the parties' contract, the alternative count for unjust enrichment is not barred.

---

[92] Compl. [Doc. No. 1] ¶ 217.
[93] Compl. [Doc. No. 1] ¶¶ 214, 217.
[94] *Berardi v. USAA Gen. Indem. Co.*, 606 F. Supp. 3d 158, 163 (E.D. Pa. 2022).
[95] *Stoeckinger v. Presidential Fin. Corp. of Delaware* Valley, 948 A.2d 828, 833 (2008) (citing *Styer v. Hugo*, 619 A. 2d 347, 350 (1993)).
[96] *Vantage Learning (USA), LLC v. Edgenuity, Inc.*, 246 F. Supp. 3d 1097, 1100 (E.D. Pa. 2017).
[97] *Id.*

Defendants claim that Plaintiffs baldly assert that Defendants, including BPE, received some or all of Plaintiffs' investment funds without sufficient factual matter to state a claim that is plausible.[98] However, Plaintiffs' Complaint asserts that BPE Defendants received and possessed Plaintiffs' funds without Plaintiffs' authorization or consent.[99] Consequently, BPE Defendants may have obtained more than $18.5 million that they were not entitled to.[100] It would be unjust for BPE Defendants to deprive Plaintiffs of their investment funds that Plaintiffs allege were being invested according to the terms agreed upon by the parties. Furthermore, as Plaintiffs pled in their Complaint, it would surely be actionable for BPE Defendants to retain the benefit, use, and enjoyment of more than $18.5 million or assets purchased with Plaintiffs' retirement and pension funds.[101] Thus, Plaintiffs have sufficiently pled a count for unjust enrichment, and the Court will deny the motion to dismiss Count Eight.

### c. Defendants Paula Pezzano and the Estate's Motion to Dismiss

Plaintiffs also assert Counts I-III and V-VIII against the Estate, and Counts VII and VIII against Paula Pezzano (collectively, the "Pezzano Defendants"). The Pezzano Defendants have moved to dismiss all counts. For the reasons below, the motion will be denied.

#### i. Count I – Violation of Exchange Act Section 10(b) and SEC Rule 10b-5[102]

Plaintiffs assert Count I against the Estate. Plaintiffs have properly met the pleading standards for a count against the Estate under Rule 10b-5. First, Plaintiffs plead numerous misrepresentations, including misrepresentations that Mr. Pezzano was a legitimate securities broker and investment adviser; JPA was a limited partnership comprised of multiple financial

---

[98] BPE Defs.' Mem. Supp. Mot. Dismiss [Doc. No. 15-1] at 13.
[99] Compl. [Doc. No. 1] ¶ 221.
[100] Compl. [Doc. No. 1] ¶ 222.
[101] Compl. [Doc. No. 1] ¶ 222.
[102] As the claims addressed here are the same counts addressed in the BPE Defendants' Motion to Dismiss, the Court will assume familiarity in the law and will only restate when necessary for clarity.

and investment professionals and investors; JPA offered legitimate investments; Mr. Pezzano actually invested the Plaintiffs' funds in legitimate investments and accounts; and that Plaintiffs received returns on their purported investments on which they paid taxes.[103]

Plaintiffs next properly plead the second element, scienter, by asserting that "Pezzano intentionally and/or recklessly employed these multiple devices, schemes, and artifices to defraud for the purpose of convincing each of the [Plaintiffs] to entrust their life savings and retirement funds to him and enable him to use the [Plaintiffs'] money for his own benefit, use, and enjoyment and/or for the benefit, use, and enjoyment of his friends, family, and accomplices."[104]

For the third element, Plaintiffs pled a connection between Mr. Pezzano's misrepresentations and their purchase of securities because they asserted that had they known of the true nature of Mr. Pezzano's misrepresentations, they would not have agreed to invest their money with Pezzano.[105] This allegation also establishes the fourth element, that Plaintiffs relied on Mr. Pezzano's misrepresentations, required under Rule 10b-5. Thus, Plaintiffs have satisfied the third and fourth element required to state a claim under Rule 10b-5.

Plaintiffs have properly pled the fifth element, economic loss, by asserting that as a direct and proximate result of Mr. Pezzano's alleged fraud, the Plaintiffs collectively sustained losses in excess of $18.5 million. Finally, the sixth element, loss causation, is established through Plaintiffs' factual allegations detailing individual Plaintiffs' transfer of funds to Mr. Pezzano based on BPE employees' misrepresentations—funds which were not invested and are now

---

[103] Compl. [Doc. No. 1] ¶ 153.
[104] Compl. [Doc. No. 1] ¶ 158.
[105] Compl. [Doc. No. 1] ¶ 162.

missing and unaccounted for. As all six elements of Count One have been met, the Court declines to dismiss the claim against the Estate.

### ii.   Count II – Fraudulent Misrepresentation

Plaintiffs assert Count II against the Estate. Plaintiffs have properly met the pleadings standards for a claim of fraudulent misrepresentation against the Estate. Plaintiffs assert that Mr. Pezzano misrepresented that he was a legitimate securities broker and investment advisor and that JPA was a limited partnership of multiple financial professionals offering safe, conservative, and legitimate investments.[106] Based on these allegations, Plaintiffs have pled sufficient factual allegations that Mr. Pezzano made misrepresentations of material facts to induce Plaintiffs into investing with Mr. Pezzano. As such, Plaintiffs' fraudulent misrepresentation claim against the Estate will proceed.

### iii.   Count III – Negligent Misrepresentation

Plaintiffs assert Count III against the Estate. Plaintiffs allege that "[i]n connection with sale of securities or purported sale of securities to the [Plaintiffs], Mr. Pezzano negligently misrepresented and/or failed to disclose material information to the [Plaintiffs]."[107] As in Count II, Mr. Pezzano's alleged misrepresentations and omissions included that Mr. Pezzano was a legitimate securities broker and investment advisor, that JPA was a limited partnership comprised of multiple financial and investment professionals and investors, and that the Plaintiffs' funds would be invested in conservative, fixed-rate investments.[108] Plaintiffs have sufficiently pled the requirements for negligent misrepresentation for a claim against the Estate.

---

[106] Compl. [Doc. No. 1] ¶ 179.
[107] Compl. [Doc. No. 1] ¶ 178.
[108] Compl. [Doc. No. 1] ¶¶ 179(a)-(k).

iv.  Count V – Breach of Fiduciary Duty

Plaintiffs bring Count V against the Estate, alleging that Plaintiffs "reposed their trust, confidence, and pecuniary interests" in Mr. Pezzano by investing with him.[109] Plaintiffs further allege that Mr. Pezzano was the actual and/or ostensible agent of JPA and BPE, and that Mr. Pezzano owed the Plaintiffs a fiduciary duty that he breached when he failed to invest the Plaintiffs' life savings and retirement funds in accordance with the Plaintiffs' instructions.[110] Plaintiffs further allege that as a direct and proximate result of this breach, the Plaintiffs have sustained the collective loss of their life savings and retirement funds.[111] Accordingly, Plaintiffs have sufficiently pled breach of fiduciary duty against the Estate.

v.  Count VI – Breach of Contract

Plaintiffs additionally bring Count VI against the Estate. Plaintiffs claim that Plaintiffs and Mr. Pezzano entered into an oral contract where the Plaintiffs agreed to provide Mr. Pezzano with monies to be invested in exchange for a fee of .25% per year on the value of the invested funds.[112] This claim shows the existence of a contract between the parties and the essential terms, satisfying the first element for a breach of contract claim. Next, Plaintiffs pled that Mr. Pezzano breached the parties' contract by his failure to invest Plaintiffs' money in accordance with the parties' agreement and misappropriating Plaintiffs' funds for his personal use and enjoyment.[113] Finally, Plaintiffs assert that as a result of the breach, they collectively sustained damages in excess of $18.5 million. Since Plaintiffs have pled each element required for a breach of contract claim, the Court declines to dismiss the breach of contract claim against the Estate, and the claim will proceed to discovery.

---

[109] Compl. [Doc. No. 1] ¶ 196.
[110] Compl. [Doc. No. 1] ¶¶ 195-199.
[111] Compl. [Doc. No. 1] ¶ 200.
[112] Compl. [Doc. No. 1] ¶ 203.
[113] Compl. [Doc. No. 1] ¶ 207.

vi.   Count VII – Conversion

Plaintiffs bring Count VII against both the Estate and Paula Pezzano. Plaintiffs assert that Plaintiffs entrusted Mr. Pezzano with their money, collectively giving him over $18.5 million, which enriched Mr. Pezzano.[114] Plaintiffs further allege that Mr. Pezzano failed to invest the funds and instead misappropriated these funds, which, upon Mr. Pezzano's death, transferred to Paula Pezzano among others, converting them for their own benefit.[115] Plaintiffs assert that the Estate and Paula Pezzano retaining these funds would be unlawful.[116] Plaintiffs have sufficiently pled the elements required for a conversion claim. Accordingly, the Court will not dismiss the conversion claim against the Estate or Paula Pezzano.

vii.   Count VIII – Unjust Enrichment

Finally, Plaintiffs bring Count VIII against Paula Pezzano and the Estate. Under Pennsylvania law, "the most significant element of the doctrine is whether the enrichment of the defendant is unjust."  "It is well-settled in Pennsylvania that the existence of a contract prevents a party from bringing a claim for unjust enrichment."  Nevertheless, Rule 8(d)(2) "permits a plaintiff to plead unjust enrichment in the alternative in certain circumstances," including where "the existence of a contract is uncertain or its validity is disputed by the parties."

It would certainly be unjust for the Estate and Paula Pezzano, as its executrix, to retain the $18.5 million Plaintiffs believed they were investing with Mr. Pezzano, or the assets allegedly purchased with those funds, when the Pezzano Defendants were never entitled to these funds. As such, Plaintiffs have sufficiently pled a claim for unjust enrichment against the Estate and Paula Pezzano. The claim will proceed.

---

[114] Compl. [Doc. No. 1] ¶¶ 212-213.
[115] Compl. [Doc. No. 1] ¶ 216.
[116] Compl. [Doc. No. 1] ¶ 219.

### d.  Defendants Paula Pezzano and the Estate's Motion to Strike Service on JPA

The Pezzano Defendants have also filed a motion to strike service, alleging that "Plaintiffs have failed to properly serve JPA."[117] Pezzano Defendants claim that Paula Pezzano has no affiliation with JPA, she has never been an officer, director, employee or agent of JPA, and that she factually never accepted service on behalf of JPA.[118] Pezzano Defendants also assert that service was deficient. They request that the Court strike the service and direct Plaintiffs to "properly" serve JPA. Plaintiffs respond that the Pezzano Defendants "do not have standing to challenge the validity of service on non-movant JPA or otherwise move to dismiss the Complaint on JPA's behalf,"[119] or, alternatively, that JPA was properly served under Federal Rule of Civil Procedure 4(h)(1)(B).[120]

Federal Rule of Civil Procedure 4(h) guides the process of serving a corporation, partnership, or association. Proper service of a corporation, partnership, or association requires that the defendant entity be served in the United States by either following state law for serving a summons in the state where the district court is located—here, Pennsylvania—or by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process."[121]

Plaintiffs assert service upon JPA through personal service on Paula Pezzano in her capacity as the executrix of the Estate.[122]  The Pezzano Defendants argue that Paula Pezzano is not an officer or agent of JPA.[123] JPA, as noted multiple times throughout this opinion, was

---

[117] Pezzano Defs.' Mem. Mot. Dismiss [Doc. No. 12-3] at 8.
[118] Pezzano Defs.' Mem. Mot. Dismiss [Doc. No. 12-3] at 8.
[119] Pezzano Defs.' Mem. Mot. Dismiss [Doc. No. 12-3] at 12-13.
[120] Pezzano Defs.' Mem. Mot. Dismiss [Doc. No. 12-3] at 13.
[121] Fed. R. Civ. P. 4(h).
[122] Plaintiffs also assert they attempted to serve JPA by delivering a copy of the Summons Complaint to its principal place of business, which was listed as the same location at BPE. Service at BPE was rejected by Joseph Pezzano's daughter. Pls.' Mem. Opp. Mot. Dismiss [Doc. No. 16-1] at 14.
[123] Pezzano Defs.' Mem. Mot. Dismiss [Doc. No. 12-3] at 14.

allegedly an unregistered "limited partnership" or "sole proprietorship" single-handedly owned and operated by Mr. Pezzano.[124] When Mr. Pezzano passed away in December of 2023, there were no apparent directors or agents of the organization. The Pezzano Defendants themselves note that "JPA lacks any known living agent, officer, employee or partner."[125] Paula Pezzano, as sole heir and executrix of the Estate, including Mr. Pezzano's business JPA, was therefore the only potential person on whom service could be made as the "legal representative of now-deceased Joseph Pezzano (as either general partner or owner of JPA)."[126]

Defendants argue that Plaintiffs should have served the temporary receiver for JPA.[127] But the temporary receiver for JPA was appointed on June 18, 2024, after the Plaintiffs had already filed and served their complaint on the Pezzano Defendants.[128] Further, the Order appointing the temporary receiver does not indicate that the temporary receiver has the ability to be JPA's legal representative.[129] Given that Paula Pezzano was the only apparent agent to receive service of the summons and complaint, the Court finds that service on JPA was properly made when Paula Pezzano accepted service. The motion to strike will be denied.

## IV. CONCLUSION

For the foregoing reasons, BPE Defendants' Motion to Dismiss the Complaint and Pezzano Defendants' Motion to Dismiss the Complaint will be dismissed, and Plaintiffs' claims will proceed to discovery. Pezzano Defendants' Motion to Strike Service will also be dismissed. An order will be entered.

---

[124] Compl. [Doc. No. 1] ¶ 24.
[125] Pezzano Defs.' Mem. Mot. Dismiss [Doc. 12-3] at 14.
[126] Pls.' Mem. Opp. Mot. Dismiss [Doc. No. 16-1] at 14.
[127] Pezzano Defs.' Mem. Mot. Dismiss [Doc. No. 12-3] at 8 n.3.
[128] Pls.' Mem. Opp. Mot. Dismiss [Doc. No. 16-1] at 1 n.3.
[129] *See generally* Pls.' Ex. E [Doc. No. 16-6].