**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **STEPHANIE ANDREWS,** *et al.*, <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **JPA R/E ASSOCIATES, L.P.,** *et al*, <br><br> **Defendants.** | **CIVIL ACTION NO.  24-2371** |

## <u>MEMORANDUM OPINION</u>

**Rufe, J.**                                                                                           **June 16, 2026**

Plaintiffs initially filed this lawsuit against Defendants JPA R/E Associates, L.P. ("JPA"),

the Estate of Joseph Pezzano ("the Estate"), Bond, Pezzano & Etze P.C. ("BPE"), Paula Pezzano,

and Michele Gibson asserting various claims arising out of Plaintiffs' investments with Joesph

Pezzano.[1] These initial Defendants moved to dismiss the complaint and sought to strike service.[2]

This Court denied the Motions to Dismiss and the Motion to Strike and entered a scheduling

order.[3]

Through discovery, Plaintiffs learned information relating to certain additional

individuals they allege were involved in the claims arising from Plaintiffs' investments with

Joseph Pezzano. Accordingly, Plaintiffs sought and were granted leave to file an Amended

Complaint.[4] The Amended Complaint added Defendants Jennifer Bond, Scott Coon, Nicholle

Dapron, Emerge Accounting Group, P.C, Tina Etze, Shannon Foster, Matthew Gribosh, J.

---

[1] Compl. [Doc. No. 1].

[2] Paula Pezzano Mot. to Dismiss & Strike Service [Doc. No. 12]; BPE Mot. to Dismiss [Doc. No. 15].

[3] 6/13/25 Order [Doc. No. 34]; 7/22/25 Scheduling Order [Doc. No. 50]; 12/8/25 Supp. Case Management Order [Doc. No. 66].

[4] 12/8/25 Supp. Case Management Order [Doc. No. 66].

Pezzano & Associates, Inc., MKP Capital Inc., MKP Insurance Agency, Inc., Montgomery Management Partners, LLC, Christopher Pezzano, Principal Tax Advisors, LLC, Rocco Tatasciore, and Tripoint Wealth Solutions, LLC.[5]

New Defendants Matthew Gribosh, *pro se*, and Scott Coon now each move to dismiss the Amended Complaint.[6] Plaintiffs filed responses in opposition to both Motions to Dismiss. For the reasons stated below, the Motions to Dismiss will be denied.

## I.    FACTUAL BACKGROUND

For the purposes of the Motions to Dismiss, the Court takes all of Plaintiffs' allegations in the Amended Complaint as true.[7]

Plaintiffs are a group of investors who collectively invested $18.5 million with Joseph Pezzano through his investment business JPA.[8] Plaintiffs, who are mostly former long-term employees of Exelon/PECO, were given the option at retirement of cashing out their pensions and receiving a lump-sum distribution to invest into a retirement vehicle of their choosing, including self-directed IRAs.[9] Plaintiffs primarily sought to invest their retirement funds in low-risk investment strategies.[10] Mr. Pezzano represented himself to each of the Plaintiffs "to be a trustworthy financial broker and advisor who specialized in low-risk investments in REITs and annuities with guaranteed fixed rates of return between 7% and 8% per annum that were ideal for self-directed IRAs."[11]

---

[5] Am. Compl. [Doc. No. 71].

[6] Gribosh Mot. to Dismiss [Doc. No. 102]; Coon Mot. to Dismiss [Doc. No. 107].

[7] Am. Comp. [Doc. No. 71].

[8] *Id*. ¶¶ 1-2.

[9] *Id*. ¶ 64.

[10] *See, e.g., id*. ¶¶ 119, 176, 186.

[11] *Id*. ¶ 67.

Mr. Pezzano died unexpectedly on December 25, 2023.[12] Following Mr. Pezzano's death, Plaintiffs have been unable to obtain any information regarding the status or location of their investment funds.[13] Plaintiffs contacted JPA/BPE's employees, who had previously served as Plaintiffs' point of contact, but the employees claimed that BPE had no affiliation with JPA nor had any role in Mr. Pezzano's investment business.[14] Moreover, BPE purported to have no knowledge of the status or location of Plaintiffs' investments.[15]

Gribosh is the president of MKP Capital and MKP Insurance and is Mr. Pezzano's son-in-law.[16] Plaintiffs allege that Gribosh, Mr. Pezzano, and others created the company MKP Capital and would use their clients' money to fund personal loans that Mr. Pezzano decided to extend.[17] Plaintiffs also allege that Mr. Pezzano used Plaintiffs' money to fund his business ventures and he filtered money through the businesses, including MKP Capital and MKP Insurance.[18]

Coon was previously married to Defendant Shannon Foster, who was a business associate of Mr. Pezzano and was an executive of a company known as Quantum Mechanix, Inc.[19] Plaintiffs allege that Mr. Pezzano and other Defendants specifically began soliciting investments in Quantum Mechanix, Inc. in 2006, when Quantum Mechanix was a client of J. Pezzano & Associates, Inc.[20]

---

[12] *Id.* ¶ 4.

[13] *Id.* ¶ 5.

[14] *Id.*

[15] *Id.*

[16] *Id.* ¶ 41.

[17] *Id.* ¶ 58.

[18] *Id.*

[19] *Id.* ¶¶ 39, 40.

[20] *Id.* ¶ 52.

Plaintiffs allege that JPA, Mr. Pezzano and others fraudulently transferred $5.75 million from JPA to Quantum Mechanix, Inc., $33,156 to Scott Coon, and $750,000 to Gribosh, his companies MKP Capital and MKP Insurance, or others for Gribosh's benefit.[21] Plaintiffs also allege JPA transferred $33,156 to Defendant Shannon Foster.[22] Plaintiffs claim that Foster knew that Mr. Pezzano/JPA used Quantum Mechanix to conceal the origins of money received from the Investor Plaintiffs that was transferred to Mr. Pezzano's friends, family, and associates, including Foster and her then-husband Coon.[23]

Plaintiffs allege that stolen money in the amount of $40,000 was transferred from Quantum Mechanix to Foster, Coon, or third parties for their benefit[24] and $25,000 was transferred to MKP Capital.[25] The money was transferred when Quantum Mechanix was insolvent, the transfers served no legitimate business purpose, and the funds were transferred without any consideration.[26] Quantum Mechanix also paid $20,000 to Gribosh's company MKP Capital in August 2021.[27] In addition to direct payments, Coon and Foster received the benefit of at least $32,000 in personal rent payments from Quantum Mechanix in 2017 and 2018.[28]

Following Mr. Pezzano's death, Paula Pezzano made several large transfers or "gifts" to other Defendants, including $77,500 to Gribosh in January 2024.[29] Plaintiffs allege that Gribosh

---

[21] *Id.* ¶ 76.

[22] *Id.*

[23] *Id.* ¶¶ 82-84.

[24] *Id.* ¶ 85.

[25] *Id.*

[26] *Id.* ¶ 86.

[27] *Id.* ¶ 90.

[28] *Id.* ¶ 91.

[29] *Id.* ¶ 96.

and his affiliated companies knew that Mr. Pezzano/JPA was not investing Investor-Plaintiffs' money as promised and knowingly facilitated the scheme.[30]

Plaintiffs' Amended Complaint alleges the following claims: (I) Violation of Exchange Act § 10(b) and SEC Rule 10b-5; (II) Fraudulent Misrepresentation; (III) Negligent Misrepresentation; (IV) Aiding and Abetting Fraud; (V) Breach of Fiduciary Duties; (VI) Breach of Contract; (VII) Conversion; (VIII) Unjust Enrichment; (IX) Violation of the Pennsylvania Voidable Transactions Act (the "PUVTA"); and (X) Negligent Supervision.[31]

Plaintiffs bring only Counts IV (aiding and abetting fraud), VII (conversion), VIII (unjust enrichment), and IX (violation of PUVTA, 12 Pa. C.S. § 5101, *et. seq.*) against Gribosh, and Counts VII (conversion), VIII (unjust enrichment), and IX (violation of PUVTA, 12 Pa. C.S. § 5101, *et. seq.*) against Coon.

Gribosh filed a *pro se* Motion to Dismiss the claims against him and Coon filed a counseled Motion to Dismiss the claims against him.[32]

## II.   LEGAL STANDARD

Defendants filed their Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a pleading must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "[33] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[34] The

---

[30] *Id*. ¶¶ 87, 100.

[31] *Id*. ¶ 7.

[32] Gribosh Mot. to Dismiss [Doc. No. 102]; Coon Mot. to Dismiss [Doc. No. 107].

[33] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[34] *Id.* at 678.

reviewing court must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[35] Yet, "threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" must be disregarded.[36] Courts must consider the complaint in its entirety, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.[37]

When alleging a fraud, a plaintiff must "state with particularity constituting fraud. . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[38]

## III.    DISCUSSION

### A.    Summary of Gribosh Motion to Dismiss

Gribosh argues that Plaintiffs fail to state a claim against him because the "Amended Complaint does not allege facts showing that [Gribosh] [m]ade any misrepresentation; [c]ommunicated with Plaintiffs; [p]articipated in any investment activity[; and] [c]ontrolled Plaintiff funds."[39] He also claims that the fraud-based counts fail because they do not meet the requirements of Federal Rule of Civil Procedure 9(b) for heightened pleading for fraud claims.[40] He generally argues that the Amended Complaint: fails to distinguish between the various Defendants; does not allege reliance on a statement from Gribosh or that Gribosh caused Plaintiffs' losses; does not allege a contractual relationship, advisory role, or any direct dealings

---

[35] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 230, 233 (3d Cir. 2008)).

[36] *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878-79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)).

[37] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[38] Fed. R. Civ. P. 9(b).

[39] Gribosh Mem. L. Supp. Mot. to Dismiss at 4 [Doc. No. 102].

[40] *Id.*

between Gribosh and Plaintiffs; fails to allege facts that pierce the corporate veil, establish alter ego liability, or show Gribosh's personal liability; and does not allege that Gribosh had knowledge of the alleged fraud.[41] Gribosh also asserts that Plaintiffs were unaware of him at the time of their investments so did not rely on any statement, omission or conduct by him and that he was improperly added as a Defendant late in the case.[42] Finally, Gribosh claims that he is included as a defendant due to his familial connection to Mr. Pezzano.[43] Gribosh is charged only with aiding and abetting fraud, conversion, unjust enrichment, and violation of the PUVTA.

### B.    Summary of Coon Motion to Dismiss

In his Motion to Dismiss, Coon argues that Plaintiffs' Amended Complaint makes broad allegations of "Defendants" without alleging personal wrongdoing by Coon.[44] He contends that the Amended Complaint's lack of allegations that "Coon made any statement to Plaintiffs, induced any investment, managed any corporate affairs, handled any funds on behalf of the company, or had any knowledge of the alleged scheme" bars the claims against him.[45]

Coon is charged only with conversion, unjust enrichment, and violation of the PUVTA.

### C.    Count IV - Aiding and Abetting Fraud

"Pennsylvania law recognizes the tort of aiding and abetting fraud, and the scienter requirement for this cause of action is actual knowledge of the underlying fraud."[46] A defendant may be subject to liability for aiding and abetting fraud "if the defendant knew that the other

---

[41] *Id*. at 4-5.

[42] *Id*. at 5-6.

[43] *Id.* at 4.

[44] Coon's Mem. L. Supp. Mot. Dismiss at 5 [Doc. No. 107].

[45] *Id*. at 4-5.

[46] *Marion v. Bryn Mawr Tr. Co.*, 288 A.3d 76, 94 (Pa. 2023).

party's conduct was wrongful."[47] "To state a cause of action for aiding and abetting fraud, a plaintiff must plausibly allege: (1) the existence of a fraud by the third party; (2) that defendant had 'actual knowledge of the fraud'; and (3) defendant provided 'substantial assistance or encouragement' to the party committing the fraud."[48] Gribosh, but not Coon, faces a claim of aiding and abetting fraud.

Gribosh does not challenge whether Plaintiffs stated a claim of fraud. Rather, his argument suggests that Plaintiffs failed to allege that he had knowledge of the fraud or that he provided substantial assistance or encouragement to the fraud.

The Amended Complaint alleges Gribosh and his companies helped Mr. Pezzano use his clients' money to fund personal loans that Mr. Pezzano extended.[49] Plaintiffs specifically allege that Gribosh and his companies received the benefit of hundreds of thousands of dollars of Plaintiffs' investments, both before and after Mr. Pezzano's death.[50]

The Amended Complaint explicitly states that "Gribosh, acting on behalf of [himself] and [his] affiliated companies . . . knew that JPA/Pezzano was not investing the Investor-Plaintiffs' money as promised and knowingly facilitated the fraudulent scheme."[51] It further alleges that "Gribosh, acting on behalf of himself and his companies, MKP Capital and MKP Insurance, had access to JPA's funds and falsely purported to 'invest' the funds, including those belonging to the Investor-Plaintiffs, while actually using the funds to enrich himself and his family."[52]

---

[47] *Id*. at 90 (citing RESTATEMENT (THIRD) OF TORTS: LIAB. FOR ECON. HARM § 28 (AM. L. INST. 2020)).

[48] *Van Horn, Metz & Co., Inc. v. JPMorgan Chase & Co*., Civil No. 23-1693, 2024 WL 1142872, at *2 (E.D. Pa. March 15, 2024) (quoting *id*. at 79).

[49] Am. Compl. ¶ 58.

[50] *Id*. ¶¶ 76, 85, 90, 96.

[51] *Id*. ¶ 100.

[52] *Id*. ¶ 105.

Plaintiffs allege that Gribosh had actual and/or constructive knowledge of the fraudulent nature of the transfers from Quantum Mechanix to himself and his companies[53] and that Mr. Pezzano's intended purpose was to deprive Plaintiffs of their assets and place the assets beyond Plaintiffs' reach.[54]

While the Court does not credit conclusory allegations in the Amended Complaint, Plaintiffs have adequately stated a claim that Gribosh aided and abetted a fraud. Plaintiffs state a claim that fraud occurred and pled that Gribosh received the benefit of hundreds of thousands of dollars from the fraud. While allegations of mere constructive knowledge are insufficient to state a claim, Plaintiffs allege that Gribosh had actual knowledge of the fraud and knowingly facilitated it. Actual knowledge, as well as substantial participation or encouragement, is established through Plaintiffs' allegation that Gribosh aided Mr. Pezzano in using Gribosh's companies to filter Plaintiffs' money and to fund personal loans. Based on these allegations, Plaintiffs have stated a claim of aiding and abetting fraud against Gribosh.

Gribosh's arguments regarding Rule 9(b) pleading and other generalized critiques also fail. Rule 9 requires Plaintiffs plead the circumstances of the alleged fraud with particularity, and Plaintiffs successfully pled "the who, what, when where, and how of the events at issue."[55] Stating a claim of aiding and abetting a fraud does not require heightened pleading requirements as it relates to the aiding and abetting. Because the details of the fraud are alleged with particularity, the claim meets the requirements of Rule 9(b).

The Motion to Dismiss Count IV against Defendant Gribosh will be denied.

---

[53] *Id*. ¶ 87.

[54] *Id*.

[55] *United States ex rel. Bookwalter v. UPMC,* 946 F.3d 162, 176 (3d Cir. 2019) (quoting *United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC,* 812 F.3d 294, 307 (3d Cir. 2016)).

**D.      Count VII - Conversion**

Count VII of the Amended Complaint alleges conversion against Gribosh and Coon, among other Defendants. In Pennsylvania, conversion is widely understood as "the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification."[56] Although the exercise of control over the chattel must be intentional, specific intent is not required to establish conversion.[57] Under Pennsylvania law, conversion can be committed in several ways:

> (1) acquiring possession of the chattel with the intent to assert a right to it that is adverse to the owner; (2) transferring the chattel and thereby depriving the owner of control; (3) unreasonably holding possession of the chattel from one who has the right to it; and (4) misusing or seriously damaging the chattel in defiance of the owner's rights.[58]

Neither moving Defendant raises separate arguments as to Plaintiffs' conversion claim, and both rely on the arguments set forth above.

In their Amended Complaint, Plaintiffs allege that they entrusted Mr. Pezzano with upwards of $18.5 million which Mr. Pezzano promised to invest for the Plaintiffs' benefit.[59] Mr. Pezzano did not invest these funds as promised, and instead misappropriated said funds and transferred nearly $65,200 of said funds to Coon or for his benefit and over $800,000 of said funds to Gribosh, his companies, or others for Gribosh's benefit.[60] Thus, Plaintiffs contend,

---

[56] *Spinelli by Morris v. Fallon*, 322 A.3d 956, 965 (Pa. Super. Ct. 2024) (quoting *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 659 n.3 (Pa. Super. Ct. 2000)).

[57] *Id.*

[58] *Prudential Ins. Co. of Am. v. Stella*, 994 F. Supp. 318, 323 (E.D. Pa. 1998) (internal citations omitted).

[59] Am. Compl. ¶ 279 [Doc. No. 71].

[60] *Id.* at ¶¶ 76(e), 91, 96, 281.

Coon and Gribosh each exercised unlawful dominion and control over Plaintiffs' property and thereby unlawfully converted it for his own benefit.[61]

Therefore, Coon and Gribosh's unreasonable receipt, retention, and possession of funds belonging to Plaintiffs supports Plaintiffs' claim of conversion because Coon and Gribosh each possessed Plaintiffs' property without consent and used the funds for his personal use and enjoyment.[62] Therefore, Plaintiffs have pled sufficient facts supporting their conversion count, and the Court will deny Coon's Motion to Dismiss Count VII and Gribosh's Motion to Dismiss Count VII.

### E.    VIII - Unjust Enrichment

Count VIII of the Amended Complaint, brought against Coon and Gribosh, among other Defendants, alleges unjust enrichment. Unjust enrichment is an equitable remedy defined as "the retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected, and for which the beneficiary must make restitution."[63] Under Pennsylvania law, Plaintiffs' Amended Complaint must allege facts showing that: (1) Plaintiffs conferred benefits on the Defendants, (2) Defendants appreciated such benefits, and (3) the benefits were accepted and retained under such circumstances that it would be inequitable for Defendants to retain the benefit without the payment of value.[64] Although the conferral of a benefit is a necessary element, it is not sufficient by itself, to validate

---

[61] *Id.* at ¶ 284.

[62] *Id.*

[63] *Commonwealth by Shapiro v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1034 (Pa. 2018) (quoting *Roethlein v. Portnoff L. Assocs., Ltd.*, 81 A.3d 816, 825 n.8 (Pa. 2013)).

[64] *SEI Invs. Glob. Funds Servs. v. Citibank, N.A.*, 100 F. Supp. 3d 447, 455-56 (E.D. Pa. 2015) (citing *Schenck v. K.E. David, Ltd.*, 666 A.2d 327, 328 (Pa. Super. Ct. 1995)).

an unjust enrichment claim.[65] To survive a motion to dismiss, Plaintiffs must allege facts

showing that the Defendant "specifically requested benefits or misled" Plaintiffs.[66] Furthermore,

"the most significant element of the doctrine is whether the enrichment of the defendant is

*unjust*."[67]

Neither Defendant raises separate arguments as to Plaintiffs' unjust enrichment claim,

and both rely on the arguments set forth above.

Plaintiffs' Amended Complaint asserts that Defendant Coon received and possessed

Plaintiffs' funds without their authorization or consent.[68] The Amended Complaint claims that

that most, if not all, of the funds Defendant Coon received were obtained through transactions

involving his former wife, Shannon Foster, and her business Quantum Mechanix, Inc.[69]

However, Plaintiffs include one claim that JPA, Mr. Pezzano, or others acting on his behalf

fraudulently transferred $33,156 to Coon on April 9, 2018.[70] This transfer unequivocally alleged

a benefit conferred on Coon in particular and that he appreciated such a benefit.

Plaintiffs also allege JPA and Mr. Pezzano used Foster's company Quantum Mechanix as

a vehicle to move the Plaintiffs' money, including "$40,000 to Shannon Foster, Scott Coon, or

third parties for their benefit."[71] As the Court must read the complaint in the light most favorable

to non-movant Plaintiffs, this allegation also sufficiently pleads that Coon received and

---

[65] *See Ira G. Steffy & Son, Inc. v. Citizens Bank of Pennsylvania*, 7 A.3d 278, 284 (Pa. Super. Ct. 2010) (quoting *Goldsmith Assocs. v. Del Frisco's of Phila., Inc.*, Civ. Action No. 09-1369, 2009 WL 3172752 (E.D. Pa. Oct. 1, 2009).

[66] *Id.*

[67] *Stoeckinger v. Presidential Fin. Corp. of Delaware* Valley, 948 A.2d 828, 833 (2008) (citing *Styer v. Hugo*, 619 A. 2d 347, 350 (1993)) (emphasis in original).

[68] Am. Compl. ¶ 288 [Doc. No. 71].

[69] *Id.* at ¶¶ 76 (d), 76(e), 85(e), 91.

[70] *Id.* ¶ 76(e).

[71] *Id.* ¶ 85(e).

appreciated the benefits of at least part of the $40,000. Further, Plaintiffs allege that Coon received the benefit of "at least $32,000 in personal rent payments from Quantum Mechanix."[72] While the claim alleges both Coon and Foster benefitted and the benefits may have resulted from Foster's work, the Amended Complaint states a claim of that Coon received and appreciated the benefits of these payments.

The issue, then, is whether retention of these benefits was unjust. The Amended Complaint contains no factual allegations that Defendant Coon specifically requested benefits from Plaintiffs, misled the Plaintiffs, or specifically perpetuated or knew of the fraud. However, the Court's "focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched."[73] To state a claim for unjust enrichment, Plaintiffs need only plead that retention of the benefits would result in an injustice.[74] Coon retaining the benefits of payments from Plaintiffs' retirement funds and pensions, with his knowledge or without, would result in an injustice. Accordingly, Plaintiffs have sufficiently pled a claim of unjust enrichment against Defendant Coon, and the Court will deny his Motion to Dismiss Count VIII.

Plaintiffs' Amended Complaint also asserts that Defendant Gribosh received and possessed Plaintiffs' funds without their authorization or consent.[75] Specifically, Plaintiffs assert that Defendant Gribosh, acting through MKP Capital and MKP Insurance, knew that JPA /Mr. Pezzano was not investing the Plaintiffs' retirement funds as promised.[76] The Amended Complaint further alleges that Gribosh had access to JPA's funds and falsely purported to invest

---

[72] *Id.* ¶ 91.

[73] *Mitchell v. Moore*, 729 A.2d 1200, 1204 (Pa. Super. Ct. 1999) (*quoting Schenck*, 666 A.2d at 328).

[74] *See Vautar v. First Nat. Bank of Pa.*, 133 A.3d 6, 14 (Pa. Super. Ct. 2016).

[75] Am. Compl. ¶ 288 [Doc. No. 71].

[76] *Id.* ¶ 100.

those funds, including Plaintiffs' retirement and pension assets, while instead using them to enrich himself and his family.[77]

Accepting these allegations as true, as the Court must at this stage, Plaintiffs have sufficiently alleged Gribosh knowingly accepted, retained, and benefitted from funds that were intended to be invested on Plaintiffs' behalf. The Amended Complaint plausibly alleges that under such circumstances, it would be unjust and inequitable for Gribosh to retain the benefit, use, and enjoyment of more than $845,000 or assets purchased with Plaintiffs' retirement and pension funds without restitution.[78] Thus, Plaintiffs have sufficiently pled a count for unjust enrichment against Defendant Gribosh, and the Court will deny his Motion to Dismiss Count VIII.

### F.      Count IX - Violation of the Pennsylvania Uniform Voidable Transactions Act

Count IX of the Amended Complaint alleges that both Coon and Gribosh violated the PUVTA. Section 5401(a)(1) of the PUTVA states that "[a] transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation" with "actual intent to hinder, delay, or defraud any creditor of the debtor."[79] Neither Coon nor Gribosh raise any separate arguments as to PUVTA claim, and both rely on the arguments previously set forth above.

In order to state a claim under the PUVTA, Plaintiffs must allege that the debtor (Mr. Pezzano/JPA) made a transfer "with actual intent to hinder, delay, or defraud" Plaintiffs.[80]

---

[77] *Id.* ¶ 105.

[78] *Id.* ¶ 76(b), 90, 96(d)-(e).

[79] 12 Pa. C.S. § 5104(a)(1).

[80] 12 Pa. C.S. § 5104(a)(1). In order to determine whether a fraudulent transfer occurred under § 1504(a)(1), the Court must consider, among others, the factors presented in § 5104(b), including whether: "(1) the transfer or

"[T]he issue is the debtor's [Mr. Pezzano/JPA's] intent in making the transfer, not the transferee[s'] [Coon or Gribosh's] intent, which is irrelevant."[81] If the transfer made by the debtor is voidable under the PUVTA, judgment may be entered against "the first transferee of the asset or the person for whose benefit the transfer was made" or "an immediate or mediate transferee of the first transferee."[82] A transferee has a defense to judgment if they were "an immediate or mediate transferee of the first transferee other than . . . a good faith transferee that took for value."[83]

Plaintiffs' PUVTA claims allege that Mr. Pezzano and JPA are debtors to Plaintiffs (creditors) by virtue of their investments, which Mr. Pezzano and JPA had the legal obligation to return on demand.[84] They allege that JPA, Mr. Pezzano, and others acting on his behalf transferred the Plaintiffs' funds to Coon and Gribosh, among others, as initial or subsequent transferees.[85] The Amended Complaint claims these transfers were not made in exchange for reasonably equal value.[86]  Plaintiffs allege that the transfers were made to thwart Plaintiffs' attempts to recover their investments.[87]

---

obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was disclosed or concealed; (4) before the transfer was made . . ., the debtor had been sued or threatened with suit; (5) the transfer was substantially all of the debtor's assets; (6) the debtor absconded; (6) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred . . .; (9) the debtor was insolvent or became insolvent shortly after the transfer was made . . .; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor." 12 Pa. C.S. § 5104(b).

[81] *Trizechahn Gateway LLC v. Schnader Harrison Segal & Lewis LLP*, No. 1472 WDA 2018, 2019 WL 5858227, at *5 (Pa. Super. Ct. 2019); *see also Chestnut Street Consolidated*, *LLC v. Dawara*, 619 F. Supp. 3d 489, 505-06 (E.D. Pa. 2022).

[82] 12 Pa. C.S. § 5108(b)(1).

[83] 12 Pa. C.S. § 5108(b)(1)(ii).

[84] Am. Compl. ¶¶ 292-93 [Doc. No. 71].

[85] *Id.* ¶ 293.

[86] *Id.* ¶¶ 298, 300.

[87] *Id.* ¶ 299.

Plaintiffs plead sufficient facts to support these allegations. As discussed above, the Amended Complaint alleges that JPA, Mr. Pezzano, or others on his behalf transferred over $100,000 to Coon or others on his behalf and over $844,000 to Gribosh or others on his behalf. The facts alleged state a claim that this transfer was fraudulent. Further, the Amended Complaint alleges that Coon and Gribosh did not provide any value in exchange for these payments, so at the Motion to Dismiss stage, the Amended Complaint sufficiently alleges they are not good faith transferees.

Plaintiffs' allegations are sufficient to state a claim that the debtors acted with actual intent to defraud Plaintiffs and, thus, state a claim under the PUVTA. Accordingly, Coon and Gribosh's Motions to Dismiss Count IX will be denied.

## IV.    CONCLUSION

For the reasons stated herein, the Motions to Dismiss will be denied. An appropriate order will be entered.